LAGOA, J.
James Armstrong (“Armstrong”) appeals his sentence following the trial court’s determination that he violated the terms of his written plea agreement. Because we find that Armstrong did not violate the express terms of his plea agreement, we reverse and remand for resentencing in accordance with this opinion.
I. FACTS AND PROCEDURAL HISTORY
The State charged Armstrong and six co-defendants with armed trafficking in *1157 amphetamines and conspiracy to commit armed trafficking in illegal drugs.[1] Both charges carried a potential life sentence. Shortly after his arrest, Armstrong provided a forty-nine page written sworn statement to Miami homicide detectives that included information on a co-defendant’s participation in the drug scheme. Additionally, Armstrong entered into a plea agreement with the State in which he agreed, among other things, to cooperate by providing truthful testimony consistent with his forty-nine page sworn statement given to the police. In exchange, Armstrong was to receive a reduced sentence of seventeen years in state prison with a fifteen-year minimum-mandatory, a $250,000 fine, followed by thirteen years of probation.[2]
During the plea colloquy, Armstrong swore under penalty of perjury that the forty-nine page statement he gave to police was a true and accurate statement. Additionally, the trial court advised Armstrong that if he violated the terms of his plea agreement he would be sentenced to sixty years in state prison with all minimum-mandatory sentences and fines.[3] Specifically, the trial court advised Armstrong as follows:
THE COURT: Now it says here, that if you refuse to comply with the requirement, if you get called upon to testify against any of your co-defendants in this investigation, that you could then be sentenced to 60 years with the minimum mandatory sentences and fines. Do you understand that?
THE DEFENDANT: I understand that.
The trial court accepted Armstrong’s plea and Armstrong was adjudicated guilty. The trial court further entered a written order ratifying the terms of the plea agreement, which expressly stated that it was the court’s “intention to sentence the Defendant in the manner and to the extent stipulated in the plea agreement.” Sentencing, however, was deferred to a later date after resolution of the other co-defendants’ cases.
At the sentencing hearing held nearly three months later, the State advised the trial court that Armstrong breached the terms of the plea agreement by writing a letter to the co-defendant he had previously implicated in his forty-nine page sworn statement to the police. In the letter, Armstrong advised the co-defendant to proceed to trial as he would take the blame.[4] Armstrong admitted authoring the letter and advised the trial court that he wrote the letter because he feared for his life. Armstrong further admitted that if he was called to testify at trial he would *1158 have “to make a decision about how to proceed.” During the sentencing hearing, the State argued that Armstrong violated paragraph 5 of the plea agreement by falsely implicating the co-defendant in his sworn statement.[5] The sentencing hearing was continued and, at the continuation, the trial court found that Armstrong’s act of writing the letter to his co-defendant breached the plea agreement. The trial court proceeded to sentence Armstrong to sixty years, thirty years on each count with a fifteen-year minimum-mandatory sentence for each count. This appeal ensued.
II. ANALYSIS
On appeal, Armstrong argues that the trial court erred in finding that he breached the plea agreement because the express terms of the agreement do not prohibit him from communicating with co-defendants or providing co-defendants with assurances as to his testimony at trial. Moreover, Armstrong contends that, because the State did not ask him to testify, the State failed to establish that he violated the terms of the plea agreement since it was unknown whether Armstrong would have testified inconsistently with his previous sworn statement. In response, the State contends that Armstrong’s letter to the only remaining co-defendant left to be tried thwarted the State’s ability to use Armstrong as a witness as the letter would have served as impeachment material during the co-defendant’s trial. The State further argues that Armstrong specifically violated paragraph 5 of the plea agreement.
“A plea agreement is a contract and the rules of contract law are applicable to plea agreements.” Garcia v. State, 722 So.2d 905, 907 (Fla. 3d DCA 1998); see also Obara v. State, 958 So.2d 1019, 1022 (Fla. 5th DCA 2007); State v. Frazier, 697 So.2d 944, 945 (Fla. 3d DCA 1997). Where the terms of a contract are clear and unambiguous, the express terms control. Obara, 958 So.2d at 1022; Federal Home Loan Mortgage Corp. v. Molko, 602 So.2d 983 (Fla. 3d DCA 1992).
Both parties concede that the terms of the agreement are unambiguous, and thus the express terms control. While Armstrong was required to testify in accordance with his previous statements made to law enforcement, no provision prohibited him from making statements to his co-defendants. See State v. Acosta, 506 So.2d 387 (Fla.1987) (prosecutors are required to take the steps necessary to protect their interests when negotiating plea agreements). If the State wished to foreclose such a result, it could have conditioned the written plea agreement on Armstrong agreeing to refrain from making any statements to his co-defendants. In McCoy v. State, 599 So.2d 645, 649 (Fla.1992), the Florida Supreme Court stated that “when entering into a plea agreement, the State must make sure that the specific terms of the agreement are made a part of the plea agreement and the record.”
In this case, Armstrong, pursuant to the plea agreement, was required to be avail *1159 able for any and all meetings, interviews, depositions, hearings, grand juries, and trials, and was further required to provide truthful and complete information and testimony at those events. Nothing in the record indicates that Armstrong failed to comply with these explicit terms. Indeed, this is not a case where the defendant refused to testify, refused to provide information, or provided untruthful information or testimony at any meetings, interviews, depositions, hearings, grand juries, or trials. Instead, the State argues that Armstrong’s letter violated the terms of the plea agreement by falsely implicating either himself or a co-defendant. While we do not condone the defendant’s action, at best the letter evidences Armstrong’s 'possible intent to perjure himself. The plea agreement, however, contains no language prohibiting such an action.
Lastly, we address the State’s argument that in writing the letter, Armstrong created impeachment material that weakened the State’s case against the remaining co-defendant. While we are sympathetic to the State’s dilemma, we are bound by the express terms of the plea agreement, and the plea agreement contains no language advising Armstrong that if the State’s ability to use him as a witness at hearings, grand juries or trials was compromised, this would constitute a breach of the plea agreement.
Based on the explicit terms of the plea agreement, we conclude that the State’s decision not to elicit Armstrong’s testimony in the remaining co-defendant’s trial is not evidence that Armstrong breached the plea agreement. See McCullough v. State, 974 So.2d 1214 (Fla. 2d DCA 2008); Spencer v. State, 623 So.2d 1211 (Fla. 4th DCA 1993). Indeed, it is impossible to know if Armstrong would have testified on direct examination inconsistently with the testimony he originally provided the State.
Because the trial court erred in concluding that Armstrong breached the plea agreement, we reverse the sentence imposed by the trial court. See McCullough, 974 So.2d at 1218. Armstrong is entitled to the sentence the trial court would have imposed upon his completion of the terms of the plea agreement, and we therefore remand for the trial court to impose a seventeen-year sentence with a fifteen-year minimum-mandatory term of imprisonment, and a $250,000 fíne followed by thirteen years of probation.
Reversed and remanded.

. Armstrong's co-defendants were also charged with conspiracy to traffic in illegal drugs and trafficking in amphetamines.

. Pursuant to the plea agreement, Armstrong was also entitled to credit for time served since his arrest date.

. Paragraph 12 of the plea agreement states as follows:
If the defendant violates any of the terms of this Agreement or fails to appear for any meetings, interviews, depositions, hearings, grand juries and trials as required by the State of Florida or the designated investigating law enforcement agency, or court, or fails to provide truthful and complete information and testimony at all such meetings, interviews, depositions, hearings, grand juries, and trials, or falsely implicates any person or entity through false information, then the parties agree that the defendant shall be sentenced to sixty (60) years in state prison with all minimum mandatory sentences and fines.

.In the letter, Armstrong advised his co-defendant that he would "get on the stand and tell the truth that it was my dope, you didn’t know anything, you was only coming down here to check out some roofing jobs with me.”

. Paragraph 5 of the plea agreement states as follows:
The defendant agrees to be continually available for any and all meetings, interviews, depositions, hearings, grand juries and trials as required by the State of Florida to specifically include State v. Ricky Wilhite, Shawn Dempsey, Julio Villela and further agrees to provide truthful and complete information and testimony at such meetings, interviews, depositions, hearings, grand juries and trials. The defendant specifically agrees not to falsely implicate any person or entity through false information.